IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JEFFERY O. THOMAS, )
)
                 Plaintiff, )
)
vs. )
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
) No. 4:15-cv-0007-HRH
                 Defendant. )
_____)

O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff has timely filed his opening brief,[1] to which defendant has responded.[2] Oral argument was not requested and is not deemed necessary.

Procedural Background

Plaintiff is Jeffery O. Thomas. Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

---

[1]Docket No. 15.

[2]Docket No. 19.

On June 23, 2009, plaintiff filed applications for disability benefits under Titles II and XVI of the Social Security Act. Plaintiff alleged that he became disabled on July 1, 2005. Plaintiff alleged that he is disabled because of welder's disease, magnesium poisoning, severe headaches, confusion, and vision problems. Plaintiff's applications were denied initially and upon reconsideration. After a hearing on December 8, 2010, an administrative law judge (ALJ) denied plaintiff's claims. After the Appeals Council denied plaintiff's request for review, plaintiff sought judicial review of the ALJ's decision. On January 11, 2013, the court remanded the matter for further proceedings,[3] having determined that the ALJ had failed to fully develop the record as to a possible diagnosis of multiple sclerosis and that the ALJ had erred in finding plaintiff's pain and symptom statements less than credible.[4] Upon remand, the ALJ held a hearing on June 25, 2014. After the hearing, the ALJ again denied plaintiff's claims. Thereafter, the Appeals Council denied plaintiff's request for review, thus making the ALJ's November 21, 2014 decision the final decision of the Commissioner. On March 19, 2015, plaintiff commenced this action in which he asks the court to find that he is entitled to disability benefits.

---

[3] Admin. Rec. at 517.

[4] Admin. Rec. at 531 & 535.

General Background

Plaintiff was born on August 8, 1969. He was 44 years old at the time of the hearing. Plaintiff has a high school education. Plaintiff's past relevant work includes work as a handyman, welder, shop manager, and heavy equipment operator.

The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through March 31, 2011."[5] The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[6]

---

[5]Admin. Rec. at 477.

[6]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since July 1, 2005, the alleged onset date...."[7]

At step two, the ALJ found that plaintiff "had the following severe impairments: multiple sclerosis with cognitive disorder and history of optic neuritis of the right eye...."[8]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[9] The ALJ considered Listing 11.09 (multiple sclerosis), Listing 2.02 (loss of central visual acuity), Listing 2.03 (contraction of the visual fields in the better eye), Listing 2.04 (loss of visual efficiency), and Listing 12.02 (organic mental disorders).[10] The ALJ considered the "paragraph B" criteria and concluded that plaintiff had mild restrictions in activities of daily living; moderate difficulties with regard to concentration, persistence, or pace; mild difficulties in social functioning; and no episodes

---

[6](...continued)
    claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[7]Admin. Rec. at 477.

[8]Admin. Rec. at 477.

[9]Admin. Rec. at 478.

[10]Admin. Rec. at 478-479.

of decompensation, which have been of extended duration.[11] The ALJ also considered whether plaintiff met the "paragraph C" criteria and concluded that he did not.[12]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing with a handheld assistive device; must avoid concentrated exposure to extreme cold; must avoid all exposure to irritants such as fumes, odors, dust, gases, and poorly ventilated areas; must avoid moderate exposure to operational control of moving machinery, unprotected heights, and hazardous machinery; limited to occupations requiring only occasional far acuity; work is limited to jobs where there is no production rate or pace work; and work is limited to 1 to 3 step tasks involving only simple work-related decisions with few, if any, workplace changes.[13]

The ALJ found plaintiff's pain and symptom statements less than credible because they were "not supported by objective findings, his treatment seeking behavior, examination findings, and evaluators' opinions."[14] The ALJ found plaintiff's testimony that

---

[11]Admin. Rec. at 479-480.

[12]Admin. Rec. at 480.

[13]Admin. Rec. at 480-481.

[14]Admin. Rec. at 481.

he could not afford treatment for multiple sclerosis less than credible because plaintiff had sought treatment from a naturopath and there was no evidence that plaintiff had applied for any State or Federal insurance program.[15]

The ALJ gave no weight[16] to the opinions of Lisa Del Alba[17] and Amy Derksen.[18] The ALJ gave partial weight[19] to the opinion of Dr. Zuelsdorf.[20] The ALJ also gave partial

---

[15]Admin. Rec. at 484.

[16]Admin. Rec. at 485.

[17]Lisa Del Alba, N.D., treated plaintiff from February 5, 2008 through April 29, 2010. On October 29, 2009, Del Alba noted that plaintiff "suffers debilitating symptoms after exposure to diesel fumes and many solvents/chemicals." Admin. Rec. at 213.

[18]Amy Derksen, N.D., treated plaintiff from December 15, 2009 through February 15, 2011. On December 9, 2010, she wrote that

> [t]he question has arisen if [plaintiff] is capable of training for another vocation. I know it is Jeff's desire to eventually return to working, but at this time I do not think he is capable of functioning at a high enough level to endure training and especially to be capable of working on a regular basis. I feel it would be detrimental to the progress he has made so far and I just do not think he is physically capable at this point.

Admin. Rec. at 392.

[19]Admin. Rec. at 485.

[20]On December 1, 2009, Dean Zuelsdorf, Psy.D., examined plaintiff. Dr. Zuelsdorf opined that the

> [p]rognosis for [plaintiff's] return to work in his usual occupation appears poor based upon the results of the two tests

(continued...)

weight[21] to the opinions of Dr. Lewy[22] and Dr. Foelsch.[23] The ALJ gave little weight to the

---

[20](...continued)
administered here and interview. Note that no records were provided to verify Mr. Thomas's assertions of medical diagnosis or symptoms. Prognosis for future employment is fair, depending upon compatibility of employment availability and level of cognitive deficits – noting that Mr. Thomas feels his medical situation is improving – although his current memory situation is poor for learning new tasks.

Admin. Rec. at 353.

[21]Admin. Rec. at 485.

[22]On December 8, 2009, Arthur Lewy, Ph.D., opined that plaintiff had moderate restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation, each of extended duration. Admin. Rec. at 365. He also opined that plaintiff was moderately limited in his ability to understand and remember detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; respond appropriately to changes in work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others; and was markedly limited in his ability to carry out detailed instructions and interact appropriately with the general public. Admin. Rec. at 369-370. Dr. Lewy also opined that plaintiff "can understand and remember instructions and procedures for 1-2 step tasks and he can perform these tasks at moderate pace", should have "no public contact", and "can complete predictable tasks in a workday and cope with usual workplace hassles[,] stresses and changes. He should not work around hazards and would benefit from vocational guidance." Admin. Rec. at 371.

[23]On September 9, 2013, James M. Foelsch, M.D., examined plaintiff. Dr. Foelsch opined that plaintiff "would have difficulty with work-related activity involv[ing] prolonged standing, moving about, lifting or carrying, or handling objects. He has some mild difficulties seeing due to the ocular dysmetria. This would also affect his ability to travel. He should have no trouble sitting or speaking and there appears to be no mental impairment." Admin. Rec. at 635.

testimony of Gina Peter.[24]  The ALJ gave no weight[25] to the testimony of John Gaston.[26]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[27]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," including officer helper, router, and document preparer.[28]  This finding was based on the testimony of the vocational expert.[29]

---

[24]Admin. Rec. at 486.  On January 26, 2010, Gina Peters completed a third-party function report.  Admin. Rec. at 135-142.

[25]Admin. Rec. at 486.

[26]On December 7, 2010, John Gaston wrote that

> I have been a mechanic and a machinist for over 20 years.  I have worked in shops with a similar environment as Jeff Thomas.  I have been diagnosed with metals in my blood and have not been able to work full time for quite a while.  I have been to every kind of doctor in Fairbanks, Alaska and also to the Mayo Clinic in Rochester, Minn.  Not one doctor has been able to help me.

Admin. Rec. at 167.

[27]Admin. Rec. at 487.

[28]Admin. Rec. at 487-488.

[29]Admin. Rec. at 488.  Jeff Cockrum testified as the vocational expert at the 2014 hearing.  Admin. Rec. at 676-682.

Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from July 1, 2005, through the date of this decision....."[30]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari,

---

[30]Admin. Rec. at 488.

246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in her consideration of Dr. Foelsch's opinion. Dr. Foelsch opined that plaintiff

> would have difficulty with work-related activity involv[ing] prolonged standing, moving about, lifting or carrying, or handling objects. He has some mild difficulties seeing due to the ocular dysmetria. This would also affect his ability to travel. He should have no trouble sitting or speaking and there appears to be no mental impairment.[31]

The ALJ gave Dr. Foelsch's opinion partial weight "to the extent that his opinion identifies areas in which the claimant reasonably experiences limitations."[32]

Plaintiff contends that the Dr. Foelsch's opinion was the only opinion regarding physical impairments that the ALJ relied on and argues that the ALJ misinterpreted what Dr. Foelsch meant by an inability to engage in prolonged standing and walking. The ALJ found that plaintiff could walk and stand for six hours in an 8-hour work day. Plaintiff argues that this finding is inconsistent with Dr. Foelsch's opinion and examination and the other evidence of record. On examination, Dr. Foelsch observed mild gait ataxia, bilateral lower extremity spasticity, loss of sensation to vibrations in the toes bilaterally, and

---

[31] Admin. Rec. at 635.

[32] Admin. Rec. at 486.

hyperactive reflexes in the knees and ankles.[33] Derksen observed that plaintiff was unable to maintain his balance if he closed his eyes or was in a dark room and that he experienced vertigo if he stood up too quickly.[34] Dr. Firestone[35] observed increased tone of a spastic

---

[33]Admin. Rec. at 635.

[34]Admin. Rec. at 375 & 391.

[35]On February 25, 2010, Jordan Aaron Firestone, M.D., examined plaintiff. Dr. Firestone's impression was that plaintiff

> does have some symptoms that suggest possibility of pulmonary health deficits so I am recommending a chest x-ray and lung function testing in order to screen for possible welding related lung condition. Of greater concern is his description of a series of neurological symptoms most clearly involving visual disturbance diagnosed as optic neuritis in 2005. Since that time, he has had further episodes resulting in gait instability with apparent motor spasticity and hyperreflexia. This pattern of symptoms coming at different times in different locations of the neural axis would support the diagnosis of multiple sclerosis. His examination would fit this condition. His history suggests episodes occurring as early as 1999, before his employment with Great Northwest. It is conceivable that he has had exposures to neurotoxins during the course of his work that could have contributed to central nervous system injury. In order to help distinguish between these conditions, I am recommending a brain MRI scan. If there are abnormalities, the pattern of abnormalities may help to differentiate these possibilities. Arguing against the workplace as a cause of his condition is the fact that he has worsened over time since leaving employment. In particular, regarding the concern for metal intoxication: I do not find any evidence based on the lab tests available today that suggests that he has had excessive metal exposure, and certainly nothing to indicate that he

(continued...)

quality in the legs, sustained ankle clonus, an unstable gait with a slight wide base and a tendency towards scissoring movements, an inability to maintain balance when his feet were midline, an inability to perform a tandem gait, a slow gait with a limited stride length, and a poorly done Rhomberg test.[36] Plaintiff argues that this evidence supports Dr. Foelsch's opinion that he could not engage in prolonged standing or walking and that there was no evidence to support the ALJ's finding that he could stand and walk for 6 hours in an 8-hour work day. Thus, plaintiff argues that the ALJ's RFC was not supported by substantial evidence.

The ALJ properly considered Dr. Foelsch's opinion. The ALJ pointed out that Dr. Foelsch did not define what he meant by "prolonged" activity.[37] Because Dr. Foelsch's opinion was not specific, it was not inconsistent with the ALJ's RFC. But even if the ALJ failed to properly consider Dr. Foelsch's opinion, this error would have been harmless. "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability

---

[35](...continued)
    harbors an elevated body burden. In my opinion which I shared with him clearly, I do not think that chelation therapy is warranted in this case. I suspect that it may in fact be contributing to greater instability in terms of his essential electrolytes and minerals.

Admin. Rec. at 398-399.

[36] Admin. Rec. at 398.

[37] Admin. Rec. at 486.

determination.'" Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting Carmickle v. Comm'r, Soc. Security Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)). The vocational expert testified that plaintiff could work as a document preparer, which is a sedentary job.[38] A sedentary job would not require prolonged standing or walking.

Plaintiff next argues that the ALJ erred by failing to consider SSR 85-15. The ALJ included in her RFC a limitation for avoidance of all exposure to irritants such as fumes, odors, gases, and poorly ventilated areas. Plaintiff argues that the ALJ failed to consider what impact this limitation would have on the occupational bases of light and sedentary unskilled work. This argument is based on SSR 85-15. SSR 85-15 provides that "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." SSR 85-15 also provides that "[w]here an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." Plaintiff argues that the ALJ should have expressly considered SSR 85-15 or expressly asked the vocational expert about SSR 85-15 and that the ALJ's failure to do so was error.

---

[38]Admin. Rec. at 681.

The ALJ did not error in failing to expressly consider SSR 85-15 because the ALJ relied on the vocational expert's testimony. The ALJ gave the vocational expert a hypothetical that include the limitation that plaintiff needed to avoid all exposure to irritants such as fumes, odors, gases, and poorly ventilated areas. In response to that hypothetical, the vocational expert identified three jobs that plaintiff could perform. Whether the vocational expert expressly mentioned SSR 85-15 or not, the vocational expert would have had to consider this limitation in determining what jobs plaintiff could perform. And, as defendant points out, all three jobs that the vocational expert identified do not, according to the DOT, involve any atmospheric conditions.

Plaintiff next argues that the ALJ erred in finding his pain and symptom statements less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80

F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1281). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina, 674 F.3d at 1112 (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

The ALJ found plaintiff's pain and symptom statements less than credible because they were not supported by "objective findings, his treatment seeking behavior,

examination findings, and evaluators' opinions."[39] Plaintiff argues that these were not clear and convincing reasons for finding his pain and symptom statements less than credible.

Plaintiff first argues that his treatment seeking behavior was not a clear and convincing reason to find his pain and symptom statements less than credible. The ALJ found it significant that plaintiff had not sought treatment for multiple sclerosis and rejected plaintiff's testimony that he could not afford treatment for multiple sclerosis because plaintiff had sought treatment from a naturopath and there was no evidence that plaintiff had applied for any State or Federal insurance program.[40] The ALJ also noted that plaintiff did not receive any treatment between October 2005 and February 2008.[41]

Plaintiff argues that the ALJ erred because she failed to address the main reason he did not seek treatment for multiple sclerosis, which is that plaintiff truly believes that he does not have multiple sclerosis. Plaintiff argues that this was a good reason for him to not seek treatment for multiple sclerosis and that this explains why he continued to seek treatment from the naturopath. Plaintiff also points out that the court, in its prior decision, stated that "[t]he inconsistency between the medical evidence and Mr. Thomas' allegations of metal toxicity does not warrant an adverse credibility determination.... The fact that Mr.

---

[39] Admin. Rec. at 481.

[40] Admin. Rec. at 484.

[41] Admin. Rec. at 483.

Thomas believed metal toxicity to be the cause of his symptoms does not make his testimony as to the severity of those symptoms less credible."[42] Plaintiff insists that a claimant cannot reasonably be expected to seek treatment for an ailment he sincerely does not believe he has.

Plaintiff's belief does not seem rational in light of Dr. Firestone's recommendation for a brain MRI to determine whether plaintiff had multiple sclerosis.[43] But even if plaintiff's belief that he did not have multiple sclerosis was rational, the ALJ also found it significant that plaintiff did not receive any treatment for a period of over two years. If plaintiff's pain and symptoms were as debilitating as he alleged, it is reasonable to expect that he would have received treatment during this time period. Thus, plaintiff's treatment seeking behavior was a clear and convincing reason to find plaintiff's pain and symptoms statements less than credible.

The ALJ also found plaintiff's pain and symptom statements not credible because they were not supported by medical evidence. An ALJ "may not discredit a claimant's testimony of pain [and other symptoms] and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991). But here, the ALJ gave at least one

---

[42]Admin. Rec. at 538.

[43]Admin. Rec. at 399.

other clear and convincing reason, plaintiff's unexplained lack of treatment for almost two years after he allegedly became disabled. Moreover, the medical evidence does not support some of plaintiff's symptoms. For example, plaintiff claimed to have right eye blindness[44] but in February 2010 had 20/30 vision in his right eye.[45] There was also no medical evidence to support plaintiff's claims of sensitivity to fluorescent lights, slurred speech, stuttering, cold sensitivity, and difficulty regulating his body temperature.[46]

The ALJ also found that plaintiff's pain and symptom statements were not supported by the evaluators' opinions. This was a clear and convincing reason. Although Drs. Foelsch, Zuelsdorf, and Lewy all opined that plaintiff had physical and mental impairments that would limit his ability to work, none of them opined that he would be unable to work at all.

Finally, plaintiff argues that the ALJ erred because she gave the vocational expert an incomplete hypothetical. "An ALJ must propound a hypothetical to a VE that is based on medical assumptions supported by substantial evidence in the record that reflects all the claimant's limitations." Osenbrock v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001). "The hypothetical should be 'accurate, detailed, and supported by the medical record[.]'" Id.

---

[44]Admin. Rec. at 415.

[45]Admin. Rec. at 342.

[46]Admin. Rec. at 82, 112, 450-51, 457-58, & 655.

(quoting Tackett, 180 F.3d at 1101). "It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." Id.

Plaintiff argues that the ALJ erred by including a limitation to occasional far visual acuity as opposed to a limitation for both far and near acuity. Plaintiff argues that the ALJ's finding that plaintiff was only limited as to far acuity was not supported by substantial evidence. Rather, plaintiff contends that the evidence supports a finding that he would be limited as to both far and near acuity. Plaintiff points out that Dr. Foelsch opined that plaintiff would have mild difficulties seeing but did not limit plaintiff's difficulties to only far acuity. Plaintiff also points out that the medical records from 2005 involving possible optic neuritis show instances of deficit visual acuity, which improved, but that these records do not specify that the deficiencies were only with far acuity.[47] Plaintiff also points to a July 16, 2009 treatment note in which he reported episodic inability to focus both eyes at once for the past two months.[48] Plaintiff also points to the fact that the interviewer on January 13, 2010 noted that plaintiff "had to keep focusing on paperwork and moving it closer and farther away from his face"[49] and contends that this suggests that he had trouble focusing on objects near to him. Thus, plaintiff insists that there is no evidence that suggests that he

---

[47] Admin. Rec. at 184.

[48] Admin. Rec. at 229.

[49] Admin. Rec. at 98.

is limited only as to far visual acuity. And, plaintiff argues that this would not be harmless error because the three jobs identified by the vocational expert at step five all require frequent near acuity.

The ALJ erred in limiting plaintiff to only occasional far visual acuity. There is not substantial evidence to support a limitation as to only far acuity.

Because the ALJ erred at step five, the court must consider whether to remand this matter for further proceedings or whether to remand for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). A remand for further proceedings is appropriate here because the issue of whether plaintiff is limited as to both far and near visual acuity needs to be developed.

## Conclusion

Based on the foregoing, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 15th day of January, 2016.

/s/ H. Russel Holland
United States District Judge